DAMIAN WILLIAMS
United States Attorney
Southern District of New York
By:     DAVID J. KENNEDY
        DANIELLE J. MARRYSHOW
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel. (212) 637-2733/2689
david.kennedy2@usdoj.gov
danielle.marryshow@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | **FIRST AMENDED COMPLAINT** |
| Plaintiff, | : | |
| v. | : | 24 Civ. 4632 (GHW) |
| TOLL BROS., INC.; TOLL LAND XIII LIMITED PARTNER; GREENBERG FARROW ARCHITECTURE, INC.; LENDLEASE (US) CONSTRUCTION LMB, INC. F/K/A BOVIS LEND LEASE LMB, INC.; TOLL NORTHEAST LP COMPANY, INC.; TB PRINCETON VILLAGE LLC, AND TB-BDN PLYMOUTH APARTMENTS, | : | |
| Defendants, and | : | |
| BOARD OF MANAGERS OF THE NORTH8 CONDOMINIUMS, | : | |
| as a Rule 19 Defendant. | : | |

---------------------------------------------------------------------- x

Plaintiff the United States of America (the "United States") alleges as follows:

1.      This action is brought by the United States to enforce the Fair Housing Act, as amended by the Fair Housing Amendments Act of 1988 (the "Fair Housing Act" or the "FHA"), 42 U.S.C. §§ 3601-3619.

2. As set forth below, the United States alleges that defendants have unlawfully discriminated against persons with disabilities under the FHA by failing to design and construct multifamily buildings and associated places of public accommodation so as to be accessible to persons with disabilities.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 3612(o) and 3614(a).

4. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims asserted in this action arose in this District, and because one or more properties that are the subject of this action are located in this District. Additionally, defendant Toll Bros. Inc. transacts business in this district, and residents of this District were among the prospective purchasers of condominiums in 49 North 8th Street, Brooklyn, New York 11211 ("North 8th"), and/or prospective renters at 3000 Goldfinch Boulevard in Princeton, New Jersey ("Parc at Princeton Junction"), and/or 134 Plymouth Road in Plymouth Meeting, Pennsylvania ("Parc Plymouth Meeting").

## THE DEFENDANTS

5. Defendant Toll Bros., Inc., directly and/or acting through affiliates, subsidiaries, or entities that it owns and/or controls ("Toll Brothers"),[1] is a Delaware corporation based in Pennsylvania that does business within the Southern District of New York, among other places. Toll Brothers, directly or through affiliates, subsidiaries, or entities that it owns and/or controls, has been involved in real estate development since in or about 1967.. Toll Brothers was the developer of each

---

[1] For ease of reference, all three Toll Brothers-related entities are referred to in this document collectively as "Toll Brothers": Toll Bros., Inc.; Toll Northeast LP Company, Inc.; and Toll Land XIII Limited Partner.

of the multifamily buildings identified in this complaint, and in that capacity, participated in the design and construction of those buildings.

6. Defendant Toll Land XIII Limited Partner is a limited partnership formed in the state of New York, and was the landowner and title holder of North 8th from 2004 through the completion of the construction in 2011, and in that capacity, participated in the design and construction of North 8th. It amended its name to 51 N. 8th Street L.P. on May 16, 2005, which merged into Toll Northeast LP Company, Inc.

7. Defendant GreenbergFarrow Architecture, Inc. ("GreenbergFarrow") is incorporated in the state of Georgia and provides architecture, planning, engineering, and development services related to the development of residential housing, including for many projects in this District, and has worked on numerous projects with Toll Brothers. GreenbergFarrow was the architecture firm that drew the architectural plans for the site, the public and common use areas, and the units of North 8th, and in that capacity, participated in the design and construction of North 8th.

8. Defendant Lendlease (US) Construction LMB, Inc., f/k/a Bovis Lend Lease LMB, Inc. ("Lendlease LMB") is incorporated in New York and provides construction management services. Lendlease LMB was the construction manager for North 8th, and in that capacity, participated in construction of North 8th.

9. 51 N. 8th Street, L.P. was a limited partnership formed in New York and is an indirect wholly owned subsidiary of defendant Toll Brothers. 51 N. 8th Street, L.P. developed North 8th, and had ownership of the condominium units until they were sold, and in that capacity, participated in the design and construction of North 8th. In 2016, this entity merged into Toll Northeast LP Company, Inc.

10. Defendant TB Princeton Village developed the Parc at Princeton Junction and, as the developer, participated in the design and construction of this multifamily property.

11. Defendant TB-BDN Plymouth Apartments developed the Parc Plymouth Meeting and, as the developer, participated in the design and construction of this multifamily property.

.

## THE RULE 19 DEFENDANT

12. Defendant Board of Managers of The North8 Condominiums is the board of managers of a condominium established pursuant to Article 9-B of the New York Real Property Law with respect to the real property of North 8th. Defendant Board of Managers of The North8 Condominiums is a Rule 19 defendant in this action because its participation is necessary to ensure complete relief.

## INACCESSIBLE CONDITIONS IN TOLL BROTHERS' MULTIFAMILY BUILDINGS

13. Toll Brothers has designed numerous multifamily buildings for first occupancy after March 13, 1991, including 959 First Avenue, New York, New York 10022 ("The Sutton"), 49 North 8th Street, Brooklyn, New York 11211 ("North 8th"), 3000 Goldfinch Boulevard in Princeton, New Jersey ("Parc at Princeton Junction"), and 134 Plymouth Road in Plymouth Meeting, Pennsylvania ("Parc Plymouth Meeting"), and 10 Provost Street, Jersey City, New Jersey 07302 ("10 Provost") (together, the "Inspected Properties"). Inspections of each building found them to be inaccessible to persons with disabilities.

14. The Sutton consists of a tower with elevator access and contains 90 dwelling units, as well as public and common use areas that include a resident lounge, fitness room, courtyard, and children's room.

15. North 8th consists of a tower with elevator access and contains 40 dwelling units, as well as public and common use areas that include a courtyard, garage, and fitness room.

16. Parc at Princeton Junction is a 232-unit, four-floor development. It was constructed in 2018 and has nine (9) buildings. The property has a leasing office and common use area inside the main building. The exterior contains a pool, a community center with a gym, and parking.

17. Parc Plymouth Meeting is a 398-unit, four-floor development. It was constructed in 2015 and has seven (7) buildings; some of the buildings have elevators. The property has a leasing office and common use area inside the main building. The exterior contains a pool and parking. Garage parking is also available.

18. 10 Provost consists of a tower with elevator access and contains 242 dwelling units, as well as public and common use areas that include a plaza, resident lounge, laundry room, party room, fitness room, roof terrace, pet space, and sky lounge.

19. The Inspected Properties are all multifamily buildings with elevator access; and the units in those complexes are "dwellings" within the meaning of 42 U.S.C. § 3602(b) and "dwelling units" within the meaning of 24 C.F.R. § 100.21.

20. Each of the Inspected Properties were designed and constructed for first occupancy after March 13, 1991. Thus, the dwelling units at those complexes are "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7) and 24 C.F.R. § 100.21, and all three complexes are subject to the accessibility requirements of 42 U.S.C. § 3604(f)(3)(C) and 24 C.F.R. § 100.205(a), (c).

21. Although Toll Brothers was required to comply with the FHA's accessible design and construction requirements in developing multifamily complexes like The Sutton, North 8th, Parc at Princeton Junction, Parc Plymouth Meeting, and 10 Provost, it has consistently failed to do so.

22. The Sutton, which Toll Brothers designed and constructed in 2016, is inaccessible to persons with disabilities.

23. For instance, Toll Brothers designed and constructed The Sutton with the following inaccessible features, including but not limited to:

   a. The ramp for the residential service entrance is not accessible to persons who use wheelchairs because it is excessively steep and is missing a handrail.

   b. The threshold at the residential service entrance is not accessible to persons who use wheelchairs because it is too high.

   c. The controls for the dryer in the laundry room are not accessible by persons who use wheelchairs because they are too far from the front edge of the dryer.

   d. The residential lounge's common-use sink is not accessible to persons who use wheelchairs because it is too high.

   e. The residential lounge lacks accessible seating at the bar for persons who use wheelchairs because the seating does not have adequate wheelchair space.

   f. The fitness room's call button is not accessible to persons who use wheelchairs because it is too high.

   g. The fitness room's drinking fountain is not accessible by persons who use wheelchairs because the knee space is not high enough.

   h. The fitness room lacks accessible coat and mat hooks for persons who use wheelchairs because the hooks are too high.

   i. There is no accessible route to the courtyard for persons who use wheelchairs because portions of the path are not paved.

   j. The force required to operate the control for the trash chute in the trash rooms interferes with accessibility for persons with certain disabilities.

   k. The threshold at the entrance to the restroom in the children's room interferes with accessibility for persons who use wheelchairs because it is excessively high.

   l. The restrooms in the children's room and in the cellar lack an accessible circulation path and lack adequate clear floor space for maneuvering by persons who use wheelchairs.

   m. The restroom lavatories in the children's room and the cellar are not accessible to persons who use wheelchairs because they are too close to the sidewall and their grab bars are too close to the rear wall.

n. The emergency warning system is not accessible for persons with certain disabilities because it lacks visual alarms.

o. Elevator jambs are missing floor identification signs with raised characters for persons with visual impairments.

p. In individual units, the locations of thermostat controls make them inaccessible to persons who use wheelchairs because they are too high.

q. In individual units, the thresholds to both bathrooms interfere with accessible routes for persons who use wheelchairs because they are excessively high.

r. In individual units, the lavatory in the master bathroom is not accessible to persons who use wheelchairs because it excessively high and is too close to the wall.

24. In light of the inaccessible conditions identified in paragraph 23, above, Toll Brothers failed to design and construct The Sutton in accordance with the Fair Housing Act's accessibility requirements set out at 42 U.S.C. § 3604(f)(3)(C). In addition, Toll Brothers failed to comply with applicable State and local design and construction provisions, including New York City Local Law 58, in designing and constructing The Sutton.

25. North 8th, which defendants designed and constructed in 2006, is inaccessible to persons with disabilities.

26. For instance, defendants designed and constructed North 8th with the following inaccessible features, including but not limited to:

a. The running slope of the entrance to the building is not accessible to persons who use wheelchairs because it is excessively steep.

b. The front entry to the building is not accessible to persons who use wheelchairs because there is insufficient maneuvering space.

c. The intercom at the front entrance is inaccessible to persons who use wheelchairs because it lacks adequate clear floor space, the space beneath it is too steep, and its controls are located too high.

d. Mailboxes are not accessible to persons who use wheelchairs because they are located too high.

e. The common-use restroom is not accessible to persons who use wheelchairs because the toilet is located in a space that is too narrow, the toilet controls are not accessible, and the mirrors are too high.

f. The entrance and exit doors to the fitness room are not accessible by persons who use wheelchairs because the door opens too quickly and the exit button is located behind exercise equipment.

g. The fitness room is inaccessible to persons who use wheelchairs because the fitness equipment interferes with an accessible route to equipment.

h. The garage lacks accessible parking spaces for persons who use wheelchairs because there is not enough vertical clearance space for van parking.

i. There is no accessible route through the garage for persons who use wheelchairs because there are impediments to a clear circulation path.

j. The door from the garage to the building is not accessible by persons who use wheelchairs because there is not sufficient maneuvering clearance.

k. The threshold to the trash room is not accessible to persons who use wheelchairs because it is too high.

l. The threshold to the courtyard is not accessible to persons who use wheelchairs because it is too high.

m. The door to the courtyard is not accessible to persons who use wheelchairs because it is too narrow.

n. The entrances to individual units are not accessible to persons who use wheelchairs because they are too narrow.

o. The thresholds at the entrances to individual units are not accessible for persons who use wheelchairs because they are too high.

p. In individual units, the kitchens are inaccessible by persons who use wheelchairs because they lack adequate clear floor space or sufficient turning radius or maneuvering space.

q. In individual units, the bathrooms are inaccessible by persons who use wheelchairs because they lack adequate clear floor space for maneuvering.

r. In individual units, the thresholds at the patio doors are not accessible to persons who use wheelchairs because they are too high.

s. In individual units, the thresholds at the master bathroom are not accessible to persons who use wheelchairs because they are too high.

t.  In individual units, the electrical outlets in some rooms are inaccessible to persons who use wheelchairs because they are not high enough from the floor.

27. In light of the inaccessible conditions identified in paragraph 26, above, defendants failed to design and construct North 8th in accordance with the Fair Housing Act's accessibility requirements set out at 42 U.S.C. § 3604(f)(3)(C). In addition, defendants failed to comply with applicable State and local design and construction provisions, including New York City Local Law 58, in designing and constructing North 8th.

28. Parc at Princeton Junction, which Toll Brothers designed and constructed in 2018, is inaccessible to people with disabilities.

29. For instance, Toll Brothers designed and constructed Parc at Princeton Junction with the following inaccessible features, including but not limited to:

a.  The running slope of the entrance to the building is not accessible to persons who use wheelchairs because it is excessively steep.

b.  The seating at the courtyard is not accessible to persons who use wheelchairs because there is insufficient space for a forward approach.

c.  Where future resident parking is provided, there is not a van accessible space for persons who use wheelchairs.

d.  There is no tactile or Braille signage mounted on the latch side of the doors for the men's and women's multi-user toilet rooms.

e.  In individual units, the bathrooms are inaccessible by persons who use wheelchairs because they lack adequate clear floor space for maneuvering.

30. In light of the inaccessible conditions identified in paragraph 29, above, Toll Brothers failed to design and construct Parc at Princeton Junction in accordance with the Fair Housing Act's accessibility requirements set out at 42 U.S.C. § 3604(f)(3)(C). In addition, Toll Brothers failed to comply with applicable State and local design and construction provisions, including the Uniform

Construction Code, Chapter 23 of Title 5 of the New Jersey Administrative Code, in designing and constructing Parc at Princeton Junction.

31. Parc Plymouth Meeting, which Toll Brothers designed and constructed in 2015, is inaccessible to people with disabilities.

32. For instance, Toll Brothers designed and constructed Parc Plymouth Meeting with the following inaccessible features, including but not limited to:

    a. The running slope of the entrance to the building is not accessible to persons who use wheelchairs because it is excessively steep.

    b. The front entrances to Buildings 6 and 7 are not accessible to persons who use wheelchairs because the handrail extensions on the ramp do not extend 12" in the direction of travel, and/or the landing at the bottom of the ramp is too narrow.

    c. The parking spaces designated for people with disabilities are not in fact accessible because their slopes are too steep.

    d. The clubhouse kitchen / lounge is inaccessible to persons who use wheelchairs for mobility because the U-shaped kitchen lacks adequate maneuvering space and the bar/counter is too high above the finished floor.

    e. Mailboxes are not accessible to persons who use wheelchairs because they are located too high.

    f. The common-use restroom is not accessible to persons who use wheelchairs because the toilet is located in a space that is too narrow, the flush valve is not located on the open side of the toilet, and there is insufficient maneuvering clearance on the latch pull side of the door.

    g. The designated accessible route entrance to Building B5 is not in fact accessible because at the elevator, there is a significant level change and steps.

    h. In individual units, the kitchens are inaccessible by persons who use wheelchairs because they lack adequate clear floor space or sufficient turning radius or maneuvering space.

    i. In individual units, the bathrooms are inaccessible by persons who use wheelchairs because they lack adequate clear floor space for maneuvering.

    j. In individual units, the thresholds at the balcony doors are not accessible to persons who use wheelchairs because they are too high.

k. In individual units, thermostats in some rooms are inaccessible to persons who use wheelchairs because they are too high from the floor.

33. In light of the inaccessible conditions identified in paragraph 32, above, Toll Brothers failed to design and construct Parc Plymouth Meeting in accordance with the Fair Housing Act's accessibility requirements set out at 42 U.S.C. § 3604(f)(3)(C). In addition, Toll Brothers failed to comply with applicable State and local design and construction provisions in designing and constructing Parc Plymouth Meeting.

34. 10 Provost, which Toll Brothers designed and constructed in 2018, is inaccessible to persons with disabilities.

35. For instance, Toll Brothers designed and constructed 10 Provost with the following inaccessible features, including but not limited to:

   a. The plaza lacks accessible tables for persons who use wheelchairs because the fixed tables do not have adequate knee space.

   b. The force required to operate many common-use doors interferes with accessibility for persons with certain disabilities.

   c. The force required to operate the control for the trash chute in the trash rooms interferes with accessibility for persons with certain disabilities.

   d. Certain trash rooms lack adequate maneuvering space by persons who use wheelchairs.

   e. The faucet in the laundry room is not accessible to persons who use wheelchairs because it is too high.

   f. In the main lounge, the counter seating area is not accessible by persons who use wheelchairs because the counter is too high.

   g. In the party room, the counter seating area is not accessible by persons who use wheelchairs because they are too deep to access the electrical receptacles.

   h. In common-use bathrooms, the baby changing tables are not accessible by persons who use wheelchairs because they do not provide adequate knee space, and the bathroom mirrors are too high.

   i. The fitness room is not accessible by persons who use wheelchairs because

it lacks an accessible route to the fitness equipment since it is too narrow.

j. The tables and counter seating space in common-use kitchens are not accessible by persons who use wheelchairs because they do not provide adequate knee space.

k. The threshold to the roof terrace is not accessible to persons who use wheelchairs because it is too high.

l. The tables on the roof terrace are not accessible by persons who use wheelchairs because they do not provide adequate knee space.

m. The controls for the fire pit, the controls for the grill, and the faucet near the grill on the roof terrace are not accessible by persons who use wheelchairs because the parts require tight grasping or pinching to operate or contain operable parts that are out of reach for wheelchair users.

n. The ramp to the pool deck is not accessible by persons who use wheelchairs because it is too steep and lacks an adequate intermediate landing when changing directions.

o. The threshold to the sky lounge is not accessible to persons who use wheelchairs because it is too high.

p. The tables in the sky lounge are not accessible by persons who use wheelchairs because they do not have adequate knee space.

q. The pet spa is not accessible to persons who use wheelchairs because the gate at the dog play area is too narrow, the dog-wash spray is too high, and the force required to operate the faucet interferes with accessibility for persons with certain disabilities.

r. There are no accessible parking spaces with electrical conduits and boxes for electric vehicle charging stations for persons who use wheelchairs.

s. In individual units, the doors to the powder room are not accessible to persons who use wheelchairs because they are too narrow.

t. In individual units, bathrooms lack adequate clear floor space or have toilets too close to the side wall for maneuvering by persons who use wheelchairs.

u. In individual units, the kitchen sink lacks adequate clear floor space for maneuvering by persons who use wheelchairs.

v. In individual units, closets are not accessible because the closet door openings are not wide enough.

w. In individual units, the balcony thresholds are not accessible to persons who

use wheelchairs because they are too high.

36. In light of the inaccessible conditions identified in paragraph 35, above, Toll Brothers failed to design and construct 10 Provost in accordance with the Fair Housing Act's accessibility requirements set out at 42 U.S.C. § 3604(f)(3)(C). In addition, Toll Brothers failed to comply with applicable State and local design and construction provisions, including the Uniform Construction Code, Chapter 23 of Title 5 of the New Jersey Administrative Code, in designing and constructing 10 Provost.

### OTHER MULTIFAMILY PROPERTIES

37. Defendants Toll Brothers, directly and/or acting through affiliates, subsidiaries, or entities that it owns and/or controls have participated in the design and construction of other covered multifamily properties including, but not limited to, Emerson at Edge on the Hudson, 203 Legend Drive, in Sleepy Hollow, New York ("Emerson"); 160 Morgan Street in Jersey City, New Jersey ("Morgan at Provost Square"); 527 Old Bridge Turnpike in East Brunswick, New Jersey ("Kensington Place"); 900 Wessex Place in Princeton, New Jersey ("The Mews at Princeton Junction"); 45 North Main Street in Phoenixville, Pennsylvania ("The Point at Phoenixville"); 275 2nd Avenue in Needham, Massachusetts ("The Kendrick"); 2150 Astoria Circle in Herndon, Virginia ("Dulles Greene"); 1011 1st Street, SE and 200 K Street, NE in Washington, D.C. ("Parc Riverside East & West" and "Union Place," respectively). Defendants Toll Brothers and GreenbergFarrow's pattern or practice of failing to design and construct dwellings and public and common-use areas in compliance with the FHA, as alleged herein, may extend to these other multifamily properties and, absent injunctive relief, to other multifamily properties that are currently being designed and constructed.

38. Redressing the effects of the pattern or practice of non-compliance with the FHA by defendants requires, among other things, retrofits at all of the buildings at issue in this action.

# COUNT 1
## HUD Charge

39. Pursuant to 42 U.S.C. § 3610(a), the Secretary of the U.S. Department of Housing and Urban Development ("HUD"), on behalf of Complainant Assistant Secretary for Fair Housing and Equal Opportunity (the "Complainant"), filed a timely complaint of discrimination on the basis of disability discrimination against Toll Brothers, Toll Land XIII Limited Partner, Lendlease LMB, GreenbergFarrow, 51 North 8th Street L.P., and North8 Condominium Association, Inc. with HUD.

40. Pursuant to 42 U.S.C. § 3610, the Secretary of HUD conducted and completed an investigation of Complainant's complaint, and prepared an investigative report regarding the complaint of discrimination.

41. Based upon the information gathered in the investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g)(1), determined that reasonable cause existed to believe that a discriminatory housing practice occurred.

42. Therefore, on September 3, 2019, the Secretary of HUD issued a charge of discrimination, attached to this Complaint as Exhibit A (the "HUD Charge"), against the defendants listed in paragraph 40 (the "Respondents"), alleging that defendant Respondents designed and constructed North 8th in a manner not readily accessible to and useable by persons with disabilities, as required by 42 U.S.C. § 3604(f)(3)(C).

43. Respondents timely elected to proceed in federal court with respect to the claims raised in the HUD Charge pursuant to 42 U.S.C. § 3612.

44. On September 26, 2019, the Secretary of HUD authorized the Attorney General to commence a civil action, pursuant to 42 U.S.C. § 3612(o).

45. Thereafter, Respondents and the United States entered into tolling agreements that ultimately extended the United States' time to file an action asserting the claims raised in the HUD Charge until June 18, 2024.

46. By the actions and statements referred to in the foregoing paragraphs, Complainant has been injured by the following discriminatory housing practices:

    a.    Toll Brothers, Toll Land XIII Limited Partner, Lendlease LMB, GreenbergFarrow, and 51 North 8th Street L.P. discriminated in the sale or rental of, or otherwise made unavailable or denied, dwellings to persons with disabilities and others by failing to design and construct North 8th in accordance with 42 U.S.C. § 3604(f)(3), in violation of 42 U.S.C. § 3604(f)(1) and 24 C.F.R. § 100.202(a); and

    b.    Toll Brothers, Toll Land XIII Limited Partner, Lendlease LMB, GreenbergFarrow, and 51 North 8th Street L.P. discriminated in the terms, conditions, or privileges of sale or rental of dwellings, or in the provisions of services or facilities in connection with such dwellings because of disability by failing to design and construct North 8th in accordance with 42 U.S.C. § 3604(f)(3), in violation of 42 U.S.C. §3604(f)(2) and 24 C.F.R. § 100.202(b).

## COUNT 2
### OTHER FAIR HOUSING ACT CLAIMS

47. The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1–46 above.

48. Defendants have discriminated against persons with disabilities by designing and constructing multifamily buildings that qualify as "covered multifamily dwellings" in a manner that is not readily accessible to or useable by persons with disabilities, as required by 42 U.S.C. § 3604(f)(3)(C). This is true not just in the Inspected Properties, but across the portfolio of covered multifamily dwellings in which defendants participated in the design and construction. Defendants have failed to design and construct these buildings in such a matter that:

    a.    the public use and common use portions of the dwellings are readily accessible to and useable by persons with disabilities;

b. all doors designed to allow passage into and within the dwellings are sufficiently wide to allow passage by persons who use wheelchairs for mobility; and

c. all premises within such dwellings contain the following features of adaptive design:

   (i) an accessible route into and through the dwelling;

   (ii) light switches, electrical outlets, thermostats, and/or other environmental controls in accessible locations;

   (iii) reinforcements in bathroom walls to allow later installation of grab bars; and

   (iv) useable kitchens and bathrooms, such that an individual using a wheelchair can maneuver about the space.

49. Each of the defendants, through the actions and conduct referred to in the preceding paragraphs, have:

   a. Discriminated in the sale or rental of, or otherwise made unavailable or denied, dwellings to buyers or renters because of a disability, in violation of 42 U.S.C. § 3604(f)(1) and 24 C.F.R. § 100.202(a);

   b. Discriminated against persons in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection with a dwelling, because of a disability, in violation of 42 U.S.C. § 3604(f)(2) and 24 C.F.R. § 100.202(b); and

   c. Failed to design and construct dwellings in compliance with the accessibility and adaptability features mandated by 42 U.S.C. § 3604(f)(3)(C), and 24 C.F.R. § 100.205.

50. This conduct constitutes:

   a. A pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3619; and

   b. A denial to a group of persons of rights granted by the Act, 42 U.S.C. §§ 3601-3619, which denial raises an issue of general public importance.

51. Persons who may have been the victims of defendants' discriminatory housing practices are aggrieved persons under 42 U.S.C. § 3602(i), and may have suffered injuries as a result of defendants' conduct described above.

52. Defendants' discriminatory actions and conduct described above were intentional, willful, and taken in disregard for the rights of others.

**Prayer for Relief**

WHEREFORE, the United States prays that the Court enter an order that:

a. Declares that the conduct, policies, and practices of defendants, as alleged herein, violate the Fair Housing Act;

b. Enjoins defendants and their employees, agents, officers, successors, and all other persons in active concert or participation with any of them, from:

  i. Failing or refusing to bring the dwelling units and public use and common use areas at covered multifamily housing complexes that they have designed and constructed into compliance with 42 U.S.C. § 3604(f)(3)(C), and 24 C.F.R. § 100.205;

  ii. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, persons harmed by their unlawful practices to the position they would have been in but for the discriminatory conduct;

  iii. Designing and/or constructing any covered multifamily dwellings in the future that do not contain the accessibility and adaptability features required by 42 U.S.C. § 3604(f)(3)(C), and 24 C.F.R. § 100.205; and

  iv. Failing or refusing to conduct a compliance survey at covered multifamily housing complexes that they have designed and constructed to determine whether the retrofits ordered in sub-paragraph (i) above were made properly;

c. Enjoins defendants and the Rule 19 defendant from engaging in conduct that impedes any retrofits required to bring the subject properties, including covered multifamily dwelling units and public and common use areas, into compliance with the FHA in a prompt and efficient manner while minimizing inconvenience to the residents and visitors at the properties;

d. Awards appropriate monetary damages, pursuant to 42 U.S.C. § 3614(d)(1)(B), to each person harmed by defendants' discriminatory conduct and practices; and

e. Assesses a civil penalty against each defendant who participated in the design and construction of a covered multifamily property within the past five years, in an amount authorized by 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest.

The Government further prays for such additional relief as the interests of justice may require.

MERRICK GARLAND
Attorney General of the United States

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

Date: New York, New York
October 23, 2024

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By: ___/s/ David J. Kennedy_____
DAVID J. KENNEDY
DANIELLE J. MARRYSHOW
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel. No. (212) 637-2733/2689
david.kennedy2@usdoj.gov
danielle.marryshow@usdoj.gov